UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DEVIN G. NUNES,<br><br>    Plaintiff,<br><br>v.<br><br>WP COMPANY LLC,<br>D/B/A THE WASHINGTON POST,<br>AND SHANE HARRIS,<br><br>    Defendants. | Case No. 3:20-cv-146 |

# MEMORANDUM OF LAW IN SUPPORT OF
# THE WASHINGTON POST'S MOTION TO TRANSFER

WILLIAMS & CONNOLLY LLP

Kevin T. Baine (*pro hac vice* pending)
Thomas G. Hentoff (*pro hac vice* pending)
Nicholas G. Gamse (*pro hac vice* pending)
Emily A. Rose (VSB No. 89529)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
erose@wc.com

*Counsel for WP Company LLC*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT.........................................................................................................................3

I.  REP. NUNES COULD HAVE BROUGHT THIS ACTION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA. ..........................4

II. THE 1404(A) FACTORS SUPPORT TRANSFER ..........................................................5

    A.  Plaintiff's Choice of Forum ......................................................................................5

    B.  Convenience of the Parties........................................................................................7

    C.  Witness Convenience and Access..............................................................................8

    D.  Interests of Justice......................................................................................................9

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITES

## FEDERAL CASES

*Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936 (E.D. Va. 2001)..............................................6

*Arthur v. Offit*, 2010 WL 883745 (E.D. Va. Mar. 10, 2010) ...................................................10, 11

*DietGoal Innovations LLC v. Sweetgreen, Inc.*, 2013 WL 6571839 (E.D. Va. Dec. 12, 2013) ....................................................................................................................................7, 8

*Dowd v. Calabrese*, 589 F. Supp. 1206 (D.D.C. 1984) .................................................................11

*Falls v. Katmai Support Servs., LLC*, 2014 WL 6900916 (E.D. Va. Dec. 5, 2014).................5, 10

*Hengle v. Curry*, 2018 WL 3016289 (E.D. Va. June 15, 2018) ................................................4, 10

*Howard Univ. v. Watkins*, 2007 WL 763182 (D. Md. Mar. 12, 2007)...........................................7

*Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003)..............................................5, 6

*Melvin v. U.S.A. Today*, 2015 WL 251590 (E.D. Va. Jan. 20, 2015) .............................................7

*Phillips v. Uber Techs., Inc.*, 2016 WL 165024 (E.D. Va. Jan. 13, 2016) ....................................10

*Perry v. LTD, Inc.*, 2014 WL 3544988 (E.D. Va. July 17, 2014)..................................................11

*Pragmatus Av, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991 (E.D. Va. 2011)..............................10

*Seaman v. IAC/InterActiveCorp, Inc.*, 2019 WL 1474392 (E.D. Va. Apr. 3, 2019) ............. *passim*

*StrikeForce Techs.*, 2017 WL 8809781 (E.D. Va. June 9, 2017) ..................................................11

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).........................................................4, 9

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436 (4th Cir. 2015) ........................................................................................................4, 5, 7

*WaKa, LLC v. DCKickball*, 2006 WL 1391422 (E.D. Va. May 17, 2006) ..................................11

## OTHER AUTHORITIES

28 U.S.C. § 1391....................................................................................................................................5

28 U.S.C. § 1404(a) .........................................................................................................................1, 3, 11

D.C. Code § 13–422...............................................................................................................................5

**INTRODUCTION**

This case was brought in the Eastern District of Virginia for no apparent reason other than that the plaintiff's attorney, Steven S. Biss, is located here. It should be transferred under 28 U.S.C. § 1404(a) to the district with the most significant connections to the case: the District of Columbia.

California Congressman Devin G. Nunes is suing the Washington Post and one of its reporters, Shane Harris, over a February 20, 2020, article entitled "Senior intelligence official told lawmakers that Russia wants to see Trump reelected." The article has nothing to do with Virginia. To the contrary, the key underlying events took place in Washington, D.C. (not Virginia); the article was written in Washington, D.C. (not Virginia) by four journalists who live in Washington, D.C. (not Virginia); and the article was published from Washington D.C. (not Virginia). The Plaintiff, Rep. Nunes, is a United States Congressman who lives in California and works in Washington, D.C. (not Virginia).

The only apparent connection that the case has to Virginia is that Rep. Nunes's attorney is based in Charlottesville. And, as this Court recognized just last year in a similar case, he has a clear practice of bringing cases in which "the events at issue had few, if any, ties to Virginia." *Seaman v. IAC/InterActiveCorp, Inc.*, 2019 WL 1474392, at *7 n.8 (E.D. Va. Apr. 3, 2019) (Payne, J.) (citing multiple cases). Notwithstanding this Court's admonition that "convenience to counsel is *not* an appropriate consideration in resolving a motion to transfer venue," *id.* at *7 n.7 (emphasis added) (internal citation and quotation marks omitted), Rep. Nunes's counsel continues to file cases with few or no relevant ties to this District, wasting the resources of both the Court and defendants.

"As noted by the EDVA many times over, this Court cannot stand as a willing repository for cases which have no real nexus to this district." *Id.* at *7 (brackets, internal citation, and quotation marks omitted). This case has no nexus at all to this District and should be transferred.

**BACKGROUND**

The facts of the case are discussed in more detail in the Post's Rule 12(b)(6) Motion to Dismiss and supporting memorandum of law, which are being filed simultaneously with this Motion. The facts most significant to this Motion are as follows.

Rep. Devin Nunes is a California citizen and Congressman. Compl. ¶ 8. He has served in the U.S. House of Representatives since 2003. *Id.* Rep. Nunes "currently represents California's 22nd Congressional District, which is located in the San Joaquin Valley and includes portions of Tulare and Fresno Counties." *Id.* He is the Ranking Member of the House Intelligence Committee. *Id.*

This lawsuit concerns a February 20, 2020, Post article that Rep. Nunes claims was defamatory, entitled "Senior intelligence official told lawmakers that Russia wants to see Trump reelected." *Id.* ¶ 3.[1] The article reported that a senior U.S. intelligence official, Shelby Pierson, had advised lawmakers from the House Intelligence Committee that Russia wanted to see President Trump reelected, viewing his administration as more favorable to the Kremlin's interests. Ex. A. The briefing took place during a classified hearing on "election security and foreign interference in the run-up to the 2020 election," that was open to all members of the Committee. *Id.* The article reported that "[a]fter learning of that analysis . . . Trump grew angry at his acting director of national intelligence, Joseph Maguire, in the Oval Office, seeing Maguire and his staff as disloyal for speaking to Congress about Russia's perceived preference." *Id.* In addition, "Trump erroneously believed that Pierson had given the assessment exclusively to Rep.

---

[1] A copy of the online article is attached as Exhibit A (which includes a version with images as it appears online, followed by a text-only version). A copy of the February 21, 2020 print version of the article, entitled "Election warning fells spy chief," is attached as Exhibit B. A copy of the Declaration of Shane Harris is attached as Exhibit C.

2

Adam B. Schiff," and "also believed that the information would be helpful to Democrats if it were released publicly." *Id.* The article further explained that "Trump learned about Pierson's remarks from Rep. Devin Nunes." *Id.*

The Post article was co-authored by Post journalists Ellen Nakashima, Shane Harris, Josh Dawsey and Anne Gearan. All four live in Washington, D.C., and work in the Post's Washington, D.C., headquarters. *See* Ex. C, Harris Decl. ¶ 4. They reported and wrote the article while in Washington, D.C. *Id.* ¶ 6. None of the reporting for the article took place in Virginia, nor did the article mention Virginia. *See id.*; Ex. A. The article was edited and published in the Post's headquarters in Washington, D.C. Harris Decl. ¶ 8. The Post's print editions are printed in Springfield, Virginia. *Id.*

Rep. Nunes, represented by Mr. Biss, filed his lawsuit against the Post and Harris on March 2, 2020.[2] The Complaint asserts claims for defamation and conspiracy, seeking more than $250 million in damages. Compl. ¶¶ 16–29. Rep. Nunes alleges principally that the Post defamed him by implying that he told President Trump that the Pierson briefing was given exclusively to Rep. Schiff, the Committee Chairman. *See id.* ¶¶ 4–5. The Complaint does not allege that *any* relevant conduct took place in Virginia, nor does it identify *any* witnesses in Virginia.

## ARGUMENT

The federal transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Applying this statute, the "district court has discretion to decide motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"

---

[2] Harris has not been served with the Complaint. *See* Harris Decl. ¶ 9.

*Seaman*, 2019 WL 1474392, at *4 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

"Courts must answer two questions to resolve motions under this provision: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Hengle v. Curry*, 2018 WL 3016289, at *5 (E.D. Va. June 15, 2018) (Payne, J.) (quotation marks omitted). The first prong is satisfied once the movant establishes that both venue and jurisdiction are proper in the transferee district. *Seaman*, 2019 WL 1474392, at *4. "The second part of the test requires the consideration of several factors, which are: '(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.'" *Id.* at *3 (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)).

Both prongs of the test are easily satisfied in this case. Venue and jurisdiction are proper in the District of Columbia, and the remaining factors strongly weigh in favor of transfer. Alternatively, if the case is not transferred to the District of Columbia, which would be the most convenient forum, it should at least be transferred to the Alexandria Division.

**I.     REP. NUNES COULD HAVE BROUGHT THIS ACTION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.**

Rep. Nunes could have brought his claims in the District of Columbia because that Court has jurisdiction and venue is proper there.

The District of Columbia has subject matter jurisdiction over the case for the same reasons Rep. Nunes alleges here: The "parties are citizens of different States," and "[t]he amount in controversy exceeds the sum of $75,000, exclusive of interest and costs." Compl. ¶ 11 (citing 28 U.S.C. § 1332). And the Post is subject to personal jurisdiction in Washington, D.C., where the

4

company maintains its principal place of business.  *See* D.C. Code § 13–422 (District of Columbia court has personal jurisdiction over a defendant "maintaining his or its principal place of business in, the District of Columbia as to any claim for relief"); Compl. ¶ 9.

Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391.  First, "a substantial part of the events or omissions giving rise to the claim occurred" there.  28 U.S.C. § 1391(b)(2).  Second, venue is also proper because the Post is subject to personal jurisdiction there, and a corporate defendant "resides" in any judicial district for venue purposes where it is subject to personal jurisdiction.  28 U.S.C. § 1391(c)(2); *see Seaman*, 2019 WL 1474392, at *4 (finding venue proper for these same reasons).

The case indisputably could "have been brought in the transferee forum."  *See Seaman*, 2019 WL 1474392, at *3 (internal quotation marks omitted).  The first prong of the transfer test is met.

## II.   THE 1404(A) FACTORS SUPPORT TRANSFER.

As in *Seaman*, the four factors in the second prong of the analysis "strongly support transfer."  *Id*. at *4.

### A.   Plaintiff's Choice of Forum.

The first factor is "the weight accorded to plaintiff's choice of venue."  *Id*. at *3 (internal quotation marks omitted).  Ordinarily, the plaintiff's choice of forum is afforded "substantial weight."  *Id.* at *4 (quoting *Trs. of Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444).  But "if the plaintiff's choice of forum is neither the nucleus of operative facts nor the plaintiff's home forum, the plaintiff's choice is accorded less weight."  *Id.*; *accord Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003) ("[A] plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum[.]"); *see also, e.g.*, *Falls v. Katmai Support Servs., LLC*,

5

2014 WL 6900916, at *2 (E.D. Va. Dec. 5, 2014) (transferring case filed by Rep. Nunes's counsel). That is the case here.

Virginia is obviously not the home forum of Rep. Nunes, a "citizen of California" and California Congressman. *See* Compl. ¶ 8.

Virginia is also not the "nucleus of operative facts." Indeed, there is no meaningful connection between Virginia and the operative facts. The article at issue was reported, edited and published in Washington, D.C., not Virginia. Harris Decl. ¶ 6.[3] And it concerns an intelligence briefing "provided to House lawmakers in a classified hearing" at the U.S. Capitol, and President Trump's subsequent reaction "in the Oval Office." Ex. A.

The only connection that Rep. Nunes alleges to Virginia is the very same one rejected by this Court in *Seaman*. Here, Rep. Nunes asserts that he was injured in Virginia because the Post published its statements "in Virginia." Compl. ¶ 3. But "those tethers to Virginia are insufficient to warrant according [Rep. Nunes's] choice of forum any significant preference." *See Seaman*, 2019 WL 1474392, at *5. As this Court reasoned in *Seaman*, "that notion would mean that, in similar cases involving online publications, a plaintiff's choice of forum would be given significant weight in virtually any judicial district because the Internet is everywhere." *Id.*

Finally, while Mr. Nunes's lawyer Mr. Biss has his offices in nearby Charlottesville, that is not a relevant consideration. As this Court warned counsel just last year, "convenience to counsel is not an appropriate consideration in resolving a motion to transfer venue." *Id.* at *5 n.7 (quoting *Koh*, 250 F. Supp. 2d at 635); *accord Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001).

---

[3] One of the Post's journalists who was a contributor on the Article worked from Moscow. Harris Decl. ¶ 5. The Post's print editions are printed in Springfield, Virginia. *Id.* ¶ 8.

6

### B. Convenience of the Parties.

The second factor is convenience of the parties. There can be no serious doubt that it would be more convenient for the Post to litigate in Washington, D.C. The Post's principal place of business is in Washington, D.C. Compl. ¶ 9. The co-authors of the article at issue all live and work in Washington, D.C. Harris Decl. ¶ 4. The relevant files from their reporting are all maintained at Post headquarters in Washington, D.C. *Id.* Thus, District of Columbia "will be significantly more convenient for the Defendants, their witnesses, and the production of evidence." *Seaman*, 2019 WL 1474392, at *7 (citing *Bd. Trs. Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988)); *see also, e.g.*, *DietGoal Innovations LLC v. Sweetgreen, Inc.*, 2013 WL 6571839, at *2 (E.D. Va. Dec. 12, 2013) (transferring case to District of Columbia where defendant's likely witnesses and documents were in District of Columbia).

The District of Columbia is a more convenient forum for Rep. Nunes as well. Rep. Nunes's primary responsibilities as a Congressman are obviously centered in Washington, D.C. He is necessarily in Washington for his work on a regular basis. He maintains his primary Congressional office in Washington, and has no office in Virginia.[4] It is reasonable to assume that his records relevant to this case are located in Washington. *See, e.g.*, *Howard Univ. v. Watkins*, 2007 WL 763182, at *5 (D. Md. Mar. 12, 2007) (holding that the District of Columbia would be a convenient forum for plaintiff resident of Washington, D.C., even though it had brought the action in Maryland).

---

[4] Rep. Nunes's Congressional office is in the Longworth House Office Building in Washington, D.C. *See* Devin Nunes Office Locations, https://nunes.house.gov/contact/offices.htm. The Court can take judicial notice of his office address and the fact that Rep. Nunes has no office in Virginia. *See, e.g.*, *Melvin v. U.S.A. Today*, 2015 WL 251590, at *5 (E.D. Va. Jan. 20, 2015).

Even if Rep. Nunes could claim that the District of Columbia would be an inconvenient forum—and he cannot—the factor must weigh in favor of transfer because it is "significantly more convenient for the Defendants." *See Seaman*, 2019 WL 1474392, at *7; *see also DietGoal Innovations LLC*, 2013 WL 6571839, at *2.

### C.    Witness Convenience and Access.

The third factor, "witness convenience and access," also supports transfer. *Seaman*, 2019 WL 1474392, at *7 (internal quotation marks omitted). This factor is predominantly concerned with the convenience of third parties. *Id.*

Here, the most significant third parties for discovery will clearly be those individuals who were present for the Pierson briefing to members of the House Intelligence Committee; witnesses with knowledge of the communications between Rep. Nunes and President Trump regarding the briefing; and witnesses to the meeting "in the Oval Office" between President Trump and Acting Director of National Intelligence Maguire. *See* Ex. A. These witnesses include President Trump and Mr. Maguire, who both live in Washington, D.C.[5]

Other important third party witnesses include Mr. Nunes's Congressional staff members, who work in Washington, D.C.[6] Among other staffers, Rep. Nunes's Communications Director, Jack Langer, will be particularly relevant since the Post contacted him for comment prior to

---

[5] *See Biographical Data, Joseph Maguire*, The Hill, https://thehill.com/people/joseph-maguire (reporting that Mr. Maguire's residence is in Washington, D.C.).

[6] Some of Rep. Nunes's staffers in California may also have relevant knowledge, but a Washington forum would be more accessible for them than Richmond in any event. The Post does not concede that Rep. Nunes does not have control over these witnesses, but acknowledges that his control may be a disputed issue since he is suing in his personal capacity.

8

publication. *See* Harris Decl. ¶ 7.[7] Mr. Langer would thus be able to testify about the Post's efforts to contact Rep. Nunes to corroborate its reporting prior to publication, and Rep. Nunes's decision not to respond. *Id.*; Ex. A ("A spokesman for Nunes did not respond to requests for comment."). In addition, Mr. Langer has made at least one public statement alleging that the article was "false," holding himself out as someone with knowledge of relevant facts.[8] His knowledge of Rep. Nunes's involvement in the issues in question, and the basis for his subsequent allegations about the Post's article will also be important subjects of discovery.

A Washington forum would be more convenient than Richmond for all of these third party witnesses. In addition, as described *supra*, the co-authors of the article all live and work in Washington, D.C. Harris Decl. ¶ 4.

In contrast, there is no allegation in the Complaint suggesting that *any* relevant witness lives in this District.

### D. Interests of Justice.

Finally, transfer to the District of Columbia will further "the interest of justice," which "encompasses public interest of factors aimed at 'systemic integrity and fairness.'" *Seaman*, 2019 WL 1474392, at *7 (quoting *Stewart Org.*, 487 U.S. at 30). Courts may weigh a number of variables as part of this assessment, including "[j]udicial economy," "the avoidance of inconsistent judgments," "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial,

---

[7] Mr. Langer works at Rep. Nunes's Congressional Office at 1013 Longworth House Office Building, Washington, D.C. 20515. *See* https://nunes.house.gov/contact/presscontact.htm.

[8] *See* Mike Brest, *Devin Nunes Vows to Sue Washington Post for 'Garbage' Report on Classified Russia Briefing*, The Washington Examiner (Feb. 22, 2020), https://www.washingtonexaminer.com/news/devin-nunes-vows-to-sue-washington-post-for-garbage-report-on-classified-russia-briefing.

9

the ability to join other parties, and the possibility of harassment." *Id.* (internal quotation marks omitted).

In *Seaman*, this Court underscored that forum shopping gives rise to "significant concerns" with respect to the interests of justice. *Id.*; *see also Hengle*, 2018 WL 3016289, at *11 ("Systemic integrity must also take account of a party's attempt to game the federal courts through forum manipulation.") (quotation marks and ellipsis omitted); *Pragmatus Av, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011) ("When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'"). Those concerns should only be elevated here. This is now at least counsel's *fifth* recent attempt to file a case in this District that clearly should have been brought elsewhere. *See Seaman*, 2019 WL 1474392, at *7–8 & n. 8 (transferring case and citing *Phillips v. Uber Techs., Inc.*, 2016 WL 165024 (E.D. Va. Jan. 13, 2016) (transfer to the Southern District of New York); *Falls*, 2014 WL 6900916 (transfer to the District of Alaska)); *see also* CNN Motion to Transfer, *Nunes v. Cable News Network, Inc.*, No. 19-cv-00889 (E.D. Va.), ECF No. 16. Again, "'this Court cannot stand as a willing repository for cases which have no real nexus to this district.'" *Seaman*, 2019 WL 1474392, at *7 (quoting *Phillips*, 2016 WL 165024, at *3) (alteration omitted).

The forum shopping concerns should be given special attention here, where the case implicates the First Amendment rights of a media organization to cover a story of critical importance to the public. "[B]ecause the defense of baseless defamation claims imposes an additional cost, in the form of potentially deterred speech, federal courts have historically given close scrutiny to pleadings in libel actions." *Arthur v. Offit*, 2010 WL 883745, at *3 (E.D. Va.

10

Mar. 10, 2010).  That principle surely must apply to the threshold question of the venue of litigation.

Other considerations under this prong include "docket conditions between the [districts]," and "the court's familiarity with the applicable law," *Seaman*, 2019 WL 1474392, at *7, but these are not significant factors here.  There is not a material difference in the docket conditions between the districts, so this is a "minor consideration."  *See, e.g.*, *id.* (alteration and internal quotation marks omitted) (holding that the difference in docket conditions between the Eastern District of Virginia and Southern District of New York is not significant).[9]  And, for the reasons set forth in the Post's concurrent Motion to Dismiss, California law will apply to this action.  But, because there is not a significant conflict in defamation law between the states, with the exception of the California Retraction Statute,[10] the factor "has little relevance."  *Id.*

It is plainly "in the interest of justice to transfer this case."  *StrikeForce Techs.*, 2017 WL 8809781, *2 (E.D. Va. June 9, 2017); *see Seaman*, 2019 WL 1474392, at *7–*8 (transferring case to the SDNY"); *WaKa, LLC v. DCKickball*, 2006 WL 1391422, at *4 (E.D. Va. May 17, 2006) (transferring case to the District of Columbia").[11]

---

[9] The median time from filing to disposition in the District of Columbia is 5.1 months, versus 5.9 in this District.  *See* United States District Courts — National Judicial Caseload Profile, 2, 25, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf.

[10] The California Retraction Statute has been considered by at least one court in the District of Columbia.  *See Dowd v. Calabrese*, 589 F. Supp. 1206, 1212 (D.D.C. 1984) (holding that the plaintiff had made a complaint retraction demand under the statute).  In comparison, no Virginia court has considered the retraction statute in a reported decision.

[11] Alternatively, if the case is not transferred to the District of Columbia, it should be transferred to the Alexandria Division.  "In considering a motion for intra-district transfer, [courts] generally look to the same factors relevant to motions for change of venue under 28 U.S.C. § 1404(a)."  *Perry v. LTD, Inc.*, 2014 WL 3544988, at *2 (E.D. Va. July 17, 2014) (internal quotation marks omitted).  Here, for all of the same reasons that the District of Columbia is the most convenient forum for the dispute, the Alexandria Division would be a more convenient forum than Richmond.

11


## CONCLUSION

For the foregoing reasons, the Post respectfully requests that the case be transferred to the United States District Court for the District of Columbia.

Dated: March 26, 2020

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: /s/ *Emily A. Rose*

Kevin T. Baine (*pro hac vice* pending)
Thomas G. Hentoff (*pro hac vice* pending)
Nicholas G. Gamse (*pro hac vice* pending)
Emily A. Rose (VSB No. 89529)

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
erose@wc.com

*Counsel for WP Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2020, I caused a true and correct copy of the foregoing Memorandum of Law in Support of the Washington Post's Motion to Transfer to be served on counsel of record via the Court's CM/ECF system.

/s/ *Emily A. Rose*
*Counsel for WP Company LLC*