IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEVIN G. NUNES                                  )
                                                )
        Plaintiff,                              )
                                                )
v.                                              )          Case No. 1:20-cv-01403-APM
                                                )
                                                )
WP COMPANY, LLC                                 )
d/b/a The Washington Post                       )
                                                )
        Defendant.                              )
                                                )

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff, Devin G. Nunes, by counsel, pursuant to Rule 15 of the Federal Rules of

the Civil Procedure and Local Civil Rules ("LCvR") 7(i) and 15.1, respectfully moves the

Court for leave to file an Amended Complaint in the form attached hereto as *Exhibit "A"*.

1.      This defamation and conspiracy action arises out of the publication of an

article by the Washington Post on February 20, 2020, entitled "**Senior intelligence**

**official told lawmakers that Russia wants to see Trump reelected**".  Plaintiff alleges

that the article contains false and defamatory statements, including statements falsely

attributed[1] to Plaintiff. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496,

510-511 (1991) ("False attribution of statements to a person may constitute libel, if the

---

[1]     The article falsely states that Plaintiff told the President that Shelby
Pierson had given an intelligence assessment (that "Russia wants to see President Trump
reelected, viewing his administration as more favorable to the Kremlin's interests")
"exclusively to Rep. Adam B. Schiff (D-Calif.), the chairman of the House Intelligence
Committee" and "the lead impeachment manager, or prosecutor, during Trump's Senate
trial on charges of abuse of power and obstruction of Congress".  **Plaintiff never made
these statements to the President**. [*Complaint, ¶¶ 4, 5, 6, 14, 21(a), 26*].

falsity exposes that person to … [hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation]… A fabricated quotation may injure reputation in at least two senses, either giving rise to a conceivable claim of defamation.  First, the quotation might injure because it attributes an untrue factual assertion to the speaker … Second, regardless of the truth or falsity of the factual matters asserted within the quoted statement, the attribution may result in injury to reputation because the manner of expression or even the fact that the statement was made indicates a negative personal trait or an attitude the speaker does not hold.")[2] (citing *Selleck v. Globe International, Inc.*, 166 Cal.App.3d 1123, 1132, 212 Cal.Rptr. 838 (1985) ("Falsely ascribing statements to a person which would have the same damaging effect as a defamatory statement about him is libel"); *Kerby v. Hal Roach Studios, Inc.*, 53 Cal.App.2d 207, 213, 127 P.2d 577 (1942) ("A libel need not be a statement directly referring to a person and stating something defamatory about him.  It may as well be accomplished by falsely putting words into the mouth or attaching them to the pen of the

---

[2]       As evidenced by the response of third parties, the WaPo article was clearly understood to convey the false attribution intended by WaPo:

  https://twitter.com/RVAwonk/status/1230715709426024453
("Devin Nunes told Trump about the intelligence briefing on Russian interference, which made Trump so mad that he got rid of the acting DNI");

  https://twitter.com/DrDinD/status/1230756095058038786
("Once again, Trump's man on Capitol Hill is Devin Nunes: 'Trump learned about Pierson's remarks [on Russia working to reelect Trump] from Rep. Devin  Nunes (Calif.)'");

  https://www.msnbc.com/rachel-maddow-show/devin-nunes-inside-man-trump-congress-n1140296    ("Did Devin Nunes dish to Trump on intelligence briefing?  How did the president know what was said during the intelligence briefing to members of Congress?  By one account, because Devin Nunes told him")].

[*Complaint, ¶¶ 14, 19*].

person defamed and thus imputing to such person a willingness to use them, where the mere fact of having uttered or used the words would produce" harm to the plaintiff's reputation)); *Levesque v. Doocy*, 560 F.3d 82, 89-90 (1st Cir. 2009) (false attribution of comments to plaintiff encouraged listeners to form negative conclusions about plaintiff tending to harm his reputation); *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353, at * 15  (D. Haw. 2008) (there was a genuine material issue as to whether falsely attributing this statement to Plaintiff could have harmed Plaintiff's reputation as to lower him in the estimation of the community or deterred people from dealing with him); *Nelson v. Time, Inc.*, 2014 WL 940448, at * 1 (Cal. App. 2014) ("If a jury believes Nelson did not make the statements attributed to him, it could conclude that defendants' false attribution was made with knowledge of the falsity or reckless disregard for the truth.  Accordingly, Nelson has established a prima facie case of defamation and false light"); *Graham v. Boehringer Ingelheim Pharmaceuticals*, 2007 WL 3317528, at * 2 (Conn. Super. 2007) ("What was reported to company higher ups by Cadden which forms the basis of the defamation claim – bringing a gun to work and 'going postal' – were not 'opinions' of Cadden regarding what he believed were representative of a threat presented by the plaintiff.  The gravamen of Graham's complaint is that the report by Cadden attributed false quotations to the plaintiff which, as quotations, were defamatory.").

2.      Defendant Washington Post ("WaPo") filed a motion to dismiss Plaintiff's complaint [*ECF No. 8*], arguing, *inter alia*, that "Plaintiff's defamation claim must be dismissed because he failed to seek an unequivocal demand for correction or writing within 20 days of learning of the allegedly defamatory publication, as required by the

California retraction statute. Cal. Civ. Code § 48a.   His failure to do so limits his

recovery, as a matter of law, to only special damages, which he has failed to plead with

specificity."

     3.     While Plaintiff emphatically disagrees that California Law applies,[3]

---

[3]     The choice-of-law issues in this case are complex.  Following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court. *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 633-634 (1964).  Accordingly, the Court applies Virginia choice of law rules. Virginia adheres to the traditional procedural/substantive dichotomy in its choice-of-law analysis. *See, e.g., Jones v. R.S. Jones & Assoc.*, 246 Va. 3, 5, 431 S.E.2d 33 (1993) ("According to the settled rule … the *lex fori* controls all that is connected merely with the remedy.'") (quotation omitted); *Hooper v. Mussolino*, 234 Va. 558, 566, 364 S.E.2d 207 (1988) ("Under settled choice-of-law principles, however, we will apply our own law in matters that relate to procedure") (citations omitted).  Thus, the **first** choice-of-law question is whether California Civil Code § 48a is a procedural or substantive statute?  If the statute is "procedural", it will not apply because the law of the forum – the District of Columbia – will apply its own laws to matters of procedure.  If the Court determines that § 48a is not procedural, the **second** question is what state's law governs the substantive issues in the case?  In defamation cases such as this, Virginia Courts uniformly apply the law of the state where the publication occurred. *See, e.g., Fluor Enterprises, Inc. v. Mitsubishi Hitachi Power Systems Americas, Inc.*, 2018 WL 3016286, at * 3 (E.D. Va. 2018) (Texas law governed defamation case, where the statements at issue were published by a public company during a nationally broadcast earnings call that emanated from its headquarters in Texas); *Velocity Micro, Inc. v. J.A.Z. Marketing, Inc.*, 2012 WL 3017870, at * 6 (E.D. Va. 2012) ("Under Virginia law, in multi-state tort actions, commercial defamation is controlled by the law of the state in which the tort occurred, that is the say, specifically where the defamatory writing was first published.") (citing *Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992) ("Because the statements were made in Virginia, Virginia law applies.")); *St. Clair v. Righter*, 250 F.Supp. 148, 150 (W.D. Va. 1966) ("It seems well settled that in a [multi-state] defamation action, the place of publication (the last event necessary to render the tort-feasor liable) is the place of the wrong.").  Even if the Court rejects the place of publication (here, D.C. and Virginia) and follows the ruling in *Gilmore v. Jones*, 370 F.Supp.3d 630, 666 (W.D. Va. 2019), the **third** question is where was the Plaintiff "primarily" injured as a result of the defamation?  Here, Plaintiff alleges that the brunt of the personal and professional injury suffered as a result of Defendant's publications occurred in the District of Columbia and Virginia, where Plaintiff works, where Pierson and Maguire work, and where Plaintiff supposedly made the statements to the President. [*Complaint, ¶¶ 2, 3, 5, 8, 14, 15*]; *see* Restatement (Second) of Conflicts of Laws § 150(2), comment e (1977) (where the plaintiff has a significant relationship to a state other than the state of his domicile, other relevant factors must be considered in determining which law to apply); *Palmisano v. News Syndicate Company, Inc.*, 130 F.Supp. 17, 19 fn. 2 (S.D.N.Y. 1955).

Plaintiff did incur special damages [*see Complaint, ¶ 22*], and, therefore, he seeks leave to file an amended complaint that describes these damages in accordance with Rule 9(g).

4.       Subdivision 4(b) of § 48a Cal. Civ. Code defines special damages as "all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other". *See O'Hara v. Storer Communications*, 231 Ca.App.3d 1101, 1112, 282 Cal.Rptr. 712 (1991) (the "classical definition of special damage in a defamation case" is "business loss suffered by the plaintiff as a result of damage to her reputation") (citing *Terwilliger v. Wands*, 17 N.Y. 54, 60 (1858) ("As to what constitutes special damages, Starkie mentions the loss of a marriage, loss of hospitable gratuitous entertainment, preventing a servant o[r] bailiff from getting a place, the loss of customers by a tradesman; and says that in general whenever a person is prevented by the slander from receiving that which would otherwise be conferred upon him, though gratuitously, it is sufficient.  In *Olmstead v. Miller* … it was held that the refusal of civil entertainment at a public house was sufficient special damage.  So in *Williams v. Hill* … was the fact that the plaintiff was turned away from the house of her uncle and charged not to return until she had cleared up her character.  So in *Beach v. Ramey*, was the circumstance that persons, who had been in the habit of doing so, refused longer to provide fuel, clothing, &c.  These instances are sufficient to illustrate the kind of special damage that must result from defamatory words not otherwise actionable to make them so; they are damages produced by, or through, impairing the reputation."); *compare Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F.Supp.3d 16, 31-32 (D. D.C. 2019) ("Special damages" are those items

of "actual pecuniary loss" caused by the defamation) (quoting *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 295 fn. 6 (2012) (citing 3 Restatement § 575, Comment b ("Special harm ... is harm of a material and generally of a pecuniary nature"); D. Dobbs, *Law of Remedies* § 7.2, p. 520 (1873) ("Special damages in defamation cases mean pecuniary damages, or at least 'material loss;" (footnote omitted)). In *Conejo*, the plaintiff alleged that he "suffered and continues to suffer career damage, loss of consideration for career advancement, personal and professional embarrassment and humiliation, and emotional pain and suffering." The Court held that plaintiff's allegations "met the pleading standard for the purposes of overcoming a motion to dismiss." 377 F.Supp.3d at 32.

5.      Relevant here, Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Here, leave should be granted. Plaintiff has not amended his original complaint. His amendments comply with Rule 9(g) in that they set forth the "precise nature of the losses as well as the way in which the special damages resulted from the allegedly false publication." *Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002) (quoting *Schoen v. Washington Post*, 246 F.2d 670, 672 (D.C. Cir. 1957)). Amendment at this early stage presents no undue prejudice, would not interfere with the administration of the case or any deadline, and will eliminate the § 48a issue raised by Defendant in its motion to dismiss. Amendment is not futile.

## LCvR 7(m) Certification

In accordance with LCvR 7(m), Plaintiff certifies that prior to filing this motion counsel for the Plaintiff discussed the anticipated motion with opposing counsel in a good-faith effort to determine whether there was any opposition to the relief sought and, if there was, to narrow the areas of disagreement.  Counsel for the Defendant opposes this motion.


DATED:       September 18, 2020



DEVIN G. NUNES



By:    /s/ *Steven S. Biss*
                Steven S. Biss (Virginia State Bar # 32972)
                300 West Main Street, Suite 102
                Charlottesville, Virginia 22903
                Telephone:  (804) 501-8272
                Facsimile:  (202) 318-4098
                Email:  stevenbiss@earthlink.net
                (*Admitted Pro Hac Vice*)

                Richard S. Basile
                (D.C. Bar No. 374069)
                6305 Ivy Lane, Suite 416
                Greenbelt, MD 20770
                Telephone:  301-441-4900
                Facsimile:  301-441-2404
                Email:  rearsb@gmail.com

                *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By:    */s/ Steven S. Biss*
        Steven S. Biss (Virginia State Bar # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:   (804) 501-8272
        Facsimile:   (202) 318-4098
        Email:   stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Richard S. Basile
        (D.C. Bar No. 374069)
        6305 Ivy Lane, Suite 416
        Greenbelt, MD 20770
        Telephone:   301-441-4900
        Facsimile:   301-441-2404
        Email:   rearsb@gmail.com

        *Counsel for the Plaintiff*