UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEVIN G. NUNES,

      Plaintiff,

v.

WP COMPANY LLC,
D/B/A THE WASHINGTON POST,
AND SHANE HARRIS,

      Defendants.

Case No. 1:20-cv-01403-APM

**OPPOSITION TO MOTION FOR LEAVE TO AMEND**

Rep. Nunes has moved to amend his Complaint to add an allegation of special damages designed to address one of the three arguments advanced in support of the Post's motion to dismiss. But that proposed amendment is futile because it does not address the other two grounds for dismissal, and because the new allegation of special damages is inadequate in any event.

Plaintiff's proposed Amended Complaint also adds a new claim for false light invasion of privacy. But his motion does not even mention that new claim, much less explain why it is not futile. A false light claim is subject to the same limitations as a libel claim, and therefore Plaintiff's false light claim fails for all the reasons that his libel claim fails.

The Court should deny the Motion for Leave to Amend, and dismiss the case with prejudice.[1]

---

[1] The Amended Complaint also removed Shane Harris as a defendant. Mr. Harris was never served with the initial Complaint.

**I.     BACKGROUND**

On March 2, 2020, Plaintiff Devin G. Nunes filed this action in the Eastern District of Virginia. *See* Compl., ECF No. 1. The Post responded on March 26, 2020, with: (1) a Motion to Transfer the matter to the District Court for the District of Columbia, pursuant to 28 U.S.C. § 1404(a), *see* ECF No. 10; and (2) a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), *see* ECF No. 8. On May 22, 2020, Judge Payne granted the Post's transfer motion and ordered the matter, including the Post's pending Motion to Dismiss, transferred to the District of Columbia. *See* ECF Nos. 19 & 20. On May 27, 2020, this Court issued a Minute Order that invited either side to "supplement its motion to dismiss papers with controlling D.C. Circuit caselaw or persuasive authority from this District Court." Minute Order, May 27, 2020. The Post did so on June 10, 2020. Plaintiff elected not to make a submission. On September 18, 2020, Plaintiff filed the instant Motion for Leave to Amend, ECF No. 30, in which he seeks to add allegations to his Complaint related to costs he allegedly incurred in February and March 2020.

**II.    APPLICABLE LEGAL STANDARD**

A district court may deny a motion for leave to amend a pleading under Federal Rule of Civil Procedure 15(a)(2) for a "valid ground," including futility. *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). An amended complaint is futile "if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). Therefore, the court's inquiry is "for practical purposes, identical to review of a Rule 12(b)(6) dismissal based on the allegations in the [proposed] amended complaint." *In re Interbank Funding Corp. Securities Lit.*, 629 F.3d 213, 215-16 (D.C. Cir. 2010) (internal citation omitted). When a plaintiff seeks to amend while a motion to dismiss is pending, the court may evaluate those motions at the same time,

granting leave only if the allegations in the proposed amended complaint would withstand the defendant's arguments for dismissal. *See, e.g. Howard v. Fed. Express Corp.*, 280 F. Supp. 3d 26, 29 (D.D.C. 2017). Dismissal with prejudice is appropriate when the plaintiff cannot allege additional facts that would cure deficiencies in the complaint. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012).

### III.  ARGUMENT

#### A.  The Proposed Amendment Is Futile Because It Fails to Address Either of the First Two Independent Grounds for Dismissal.

The Post's Motion to Dismiss advanced three different grounds for dismissal—in order, that (1) Plaintiff cannot identify "affirmative" evidence on the face of the publication that the Post "intend[ed] or endorse[d]" its allegedly defamatory implication; (2) the Complaint failed to allege facts that would plausibly establish that the Post published with actual malice; and (3) Plaintiff failed to comply with the California retraction statute because he did not seek a retraction and did not plead special damages, to which he is limited as a result. Post Mem, ECF No. 9, 2. In his proposed amendment, Plaintiff seeks to add allegations that he "did incur special damages" and to "describe these damages." *See* Mtn. for Leave 4-5. Thus, his proposed amendment addresses only the last of the three independent reasons why the Complaint should be dismissed. For this reason alone, the amendment is futile and the Complaint should be dismissed with prejudice. *See, e.g.*, *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1339-40 (D.C. Cir. 2015); *Howard*, 280 F. Supp. 3d at 30-33; *Clifford v. Trump*, 818 F. App'x 746, 751 (9th Cir. 2020) ("Amendment would have been futile because the [publication] is not defamatory as a matter of law.").

#### B.  The Proposed Amendment Is Futile Because It Does Not Plausibly Allege That the Post Article Proximately Caused Special Damages.

"Federal Rule of Civil Procedure 9(g) requires that special damages be 'specifically stated,' i.e., the plaintiff must allege actual damages with 'particularity' and specify 'facts showing that

3

such special damages were the natural and direct result' of the defendant's conduct (here, the alleged false and disparaging article)." *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002); *see also, e.g.*, Fed. R. Civ. P. 9(g) (special damages must be "specifically stated"); *FAA v. Cooper*, 566 U.S. 284, 295 (2012) ("'Special damages' are limited to actual pecuniary loss, which must be specially pleaded and proved."). If the special damages consist of costs incurred, the costs identified must have been "expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a. In addition, under California law, "[t]he items of damage and the amounts must be pleaded in detail and with certainty." 5 Witkin, Cal. Proc. Pleading § 934: *Special Damages Must Be Pleaded* (5th ed. 2020) (citing cases); *see also, e.g.*, *Shook v. Pearson*, 221 P.2d 757, 760 (Cal. Ct. App. 1950) ("The facts as to special damages must be stated with particularity. The amount of such damages must be stated with particularity.").

In the proposed amendment, Plaintiff adds a single specific, quantified allegation of costs incurred: that he had to spend "approximately $3,000 to hire additional security personnel" for a public appearance in Fresno because of "threats to Plaintiffs' life and safety." Am. Compl., ECF No. 30-1, ¶ 15.[2] This allegation is insufficient as a matter of law, for two reasons.

First, although the First Amended Complaint states that "Plaintiff was forced to spend approximately $3,000 to hire additional security personnel" for an event in Fresno, *id*, that allegation fails to specify whether the $3,000 was incurred by his Congressional office, his campaign, some other entity or person, or Rep. Nunes personally. That Rep. Nunes personally would have incurred these costs is the least plausible of these possibilities. Security of a Congressman is obviously the responsibility of his office (i.e., the government) or his campaign.

---

[2] The amendment also refers to costs associated with other events, but those costs are not specifically stated or quantified.

Rep. Nunes is the only plaintiff here, and he cannot claim office or campaign expenditures as special damage that he suffered. *See, e.g.*, *Hardiman v. Aslam*, 125 N.E.3d 1185, 1195 (Ill. Ct. App. 2019) (holding that "the loss of monetary contributions to plaintiff's political campaign fund—money to which plaintiff had no individual right and which he was prohibited from receiving personally—are not actual damages of a pecuniary nature suffered by plaintiff individually and do not equate to special damages incurred by an individual plaintiff"). Plaintiff has not specifically alleged that he spent $3,000 *of his own money* as a result of the Post Article, and unless he does so his allegation of special damages is insufficient. *Id.*

Second, there is no adequate allegation that any additional campaign expenditures were proximately caused by the Post Article—or, more specifically, by the allegedly false and defamatory implications of which Plaintiff complains. Plaintiff may recover only those damages that were the "natural and direct result" of the allegedly defamatory implications. *Browning*, 292 F.3d at 245; *see also, e.g.*, *Song Fi, Inc. v. Google, Inc.*, 2018 WL 2215836, *5 (N.D. Cal. May 15, 2018) (special damages must be proximately caused by the defamation). That is not the case here. No one could reasonably say that death threats were a "natural" consequence of the Post Article, let alone the alleged implication at issue.

Indeed, the Amended Complaint does not even allege facts to suggest that any death threats and security expenditures were a "direct" consequence of the challenged publication. The Amended Complaint does not allege that Rep. Nunes received any death threats that made reference to the Post Article, much less to the specific defamatory implications that he claims the Article conveyed. Nor does it allege any other facts that suggest that any threats he received were due to the Post Article, as opposed to publicity surrounding his prominent role in the impeachment

proceedings or the many other public controversies in which he has been involved.³ Indeed, Rep. Nunes has claimed publicly that he received "daily" death threats requiring "proper precautions" long requiring before the Post Article was published.⁴ It is implausible that one of the most visible and controversial members of Congress, Am. Compl. ¶ 5, would need additional security because of a single Post Article reporting that he had briefed the President about a hearing on Capitol Hill.

There is, in short, nothing in the Amended Complaint to support a claim that any security costs incurred by Rep. Nunes, his office, or his campaign were proximately caused by the Post's publication "and no other." Cal. Civ. Code § 48a; *see Gorman v. Chief of Police*, 2013 WL 5276003, at *2 (M.D.N.C. Sept. 17, 2013), *adopted* 2014 WL 1230607 (M.D.N.C. Mar. 25, 2014) (dismissing defamation claim where plaintiff failed to allege "any factual matter to support a causal

---

³ *See, e.g.*, Francesca Chambers, Kate Irby and Adam Ashton, *Trump hails Devin Nunes as an impeachment hero, the 'other side's worst nightmare'*, Fresno Bee (Feb. 6, 2020) ("At a celebration of President Donald Trump's Senate acquittal, Trump on Thursday highlighted Rep. Devin Nunes as a Republican hero of the impeachment proceedings. . . . 'He's the other side's worst nightmare,' the president said. . . . 'They wanted to destroy him. They tried. They got close. But he wouldn't let it happen.'"); *see also, e.g.*, *Devin Nunes banned his local newspaper from a public event. Why is he so scared?*, The Sacramento Bee (Feb. 19, 2020) (criticizing Rep. Nunes for barring "The Fresno Bee from covering a major water forum in Tulare" and summarizing that "Nunes has been engulfed in scandal for most of President Donald Trump's time in office."). The Court can take judicial notice of the fact of these news articles and events. *See, e.g.*, *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 85 (D.D.C. 2019) (taking judicial notice of "publicly reported news events"); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) ("court[s] may take judicial notice of the existence of newspaper articles . . . that publicize[ ]" certain facts).

⁴ *See, e.g.*, Alexan Balekian, *Exclusive: Congressman Nunes Talks Lawsuits, the Mueller Reports and Death Threats*, YourCentralValley.com (Apr. 25, 2019) (reporting that Rep. Nunes "receive[s] daily death threats" and quoting him saying "*It's what you sign up for*, it's not what we want, but times are what they are right now and you have to take the proper precautions") (emphasis added), https://www.yourcentralvalley.com/news/politics/exclusive-congressman-nunes-talks-lawsuits-the-mueller-report-and-death-threats/; Transcript, Fox: Sunday Morning Futures Interview With Rep. Devin Nunes (R-CA), 2019 WLNR 31664546 (Oct. 20, 2019) (Rep. Nunes claiming that "hundreds of anonymous accounts . . . attack [him] on a daily basis," including some with "veiled death threats"). The Court can take judicial notice of these claims. *See, e.g.*, *Arpaio*, 404 F. Supp. 3d at 85.

. . . connection between the alleged statements" by defendants and the threats plaintiff claimed he received as a result); *see also Oakley v. Dolan*, 2020 WL 818920, at *10 (S.D.N.Y. 2020) (holding that plaintiff had not sufficiently alleged special damages caused by defendants' statements because the complaint did not "proffer any facts to support a direct causal connection between Defendants' statements and [the employer's] alleged decision not to pay [the plaintiff] $40,000 in appearance fees"); *Song Fi, Inc.*, 2018 WL 2215836 at *5 (granting summary judgment on defamation claim where plaintiffs "fail[ed] to provide facts to establish that any loss [of funding] was proximately caused by defamation").

   **C.**  **The Amendment Complaint Fails to State a Claim for False Light.**

  The proposed Amended Complaint also contains a new claim of false light invasion of privacy. But there are no new factual allegations to support such a claim—it is based on the same facts as the libel claim. And it fails to state a claim for two reasons.

  First, "[a] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [Plaintiff's] count[] for false light." *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013) (citations and quotations omitted). California law also subjects false light claims to the same requirements of a defamation claim. "California courts have determined that a false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication." *Shelton v. Bauer Publ'g Co., L.P.*, 2016 WL 1574025, at *14 (C.D. Cal. Apr. 18, 2016) (emphasis and quotation marks omitted). "Accordingly, where, as here, 'a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action.'" *Id.* (quoting *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 n.13 (1999) (emphasis omitted)). Like the libel claim, the false light claim fails because (1) the

Article on its face, considered in context, contains no affirmative indication that Post intended or endorsed the defamatory implication that is alleged, and (2) there is no plausible allegation of actual malice. *See* Post Mem. 8-17 (explaining that both defenses are rooted in the First Amendment); Post Supp'l. Br., ECF No. 24, 2-3 (same).

Second, a false light claim lies only where a publication "publicly portrayed [the plaintiff] in a false light that would be highly offensive to a reasonable person." *Sarver v. Chartier*, 813 F.3d 891, 907 (9th Cir. 2016) (quotation marks omitted).[5] Here, even if the Post Article's discussion of Rep. Nunes's role were somehow false, it simply would not be "highly offensive to a reasonable person." *Id.*; *see also, e.g.*, *Smith v. Clinton*, 886 F.3d 122, 129 (D.C. Cir. 2018) (per curiam) (dismissing false light claim where "no reasonable person could conclude that [the publisher's] statements put [Plaintiff] in a 'highly offensive' false light"), *cert. denied*, 139 S. Ct. 459 (2018). As the Post explained in its Motion, the Article described Rep. Nunes as a "staunch Trump ally." Post Mem. 11. There is nothing remotely offensive, much less "highly offensive to a reasonable person," about reporting that the ranking Republican member of a House Committee told the President about an intelligence briefing, even if the report erroneously suggested that the briefing had been given only to one member.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Amend should be denied, and the Complaint should be dismissed with prejudice.

---

[5] Plaintiff has argued that Virginia law should apply. *See* Opp. to Motion to Dismiss, ECF No. 15, 10-12. If he is right, his claim must be dismissed because "Virginia courts have never recognized a common law tort of invasion of privacy." *Bellotte v. Edwards*, 388 F. App'x 334, 339 (4th Cir. 2010); *see also, e.g.*, *Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 656 n.1 (E.D. Va. 2007) ("[F]alse light is not an actionable tort in Virginia.").

Dated:  October 2, 2020	Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:     /s/ *Kevin T. Baine*

Kevin T. Baine
Thomas G. Hentoff
Nicholas G. Gamse

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbaine@wc.com

*Counsel for WP Company LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, I caused a true and correct copy of the foregoing Opposition Brief of the Post to be served on counsel of record via the Court's CM/ECF system.

/s/ *Kevin T. Baine*
*Counsel for WP Company LLC*