**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| **DEVIN G. NUNES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. 20-cv-01403 (APM)** |
| | ) |
| **WP COMPANY LLC,** | ) |
| **D/B/A THE WASHINGTON POST,** | ) |
| **AND SHANE HARRIS** | ) |
| | ) |
| **Defendants.** | ) |

———————————————————————

## MEMORANDUM OPINION

## I.   INTRODUCTION

This case arises from an article published in The Washington Post concerning a purported conversation that Plaintiff Representative Devin G. Nunes had with President Donald J. Trump about a classified intelligence briefing.  Plaintiff filed this suit against Defendants WP Company LLC (d/b/a The Washington Post) ("the Post") and Shane Harris, one of the article's authors, alleging defamation and civil conspiracy.  Plaintiff has yet to serve Defendant Harris.  The Post now moves to dismiss the Complaint for failure to state a claim.

For the reasons outlined below, the court grants the Post's Motion to Dismiss and denies Plaintiff's Motion for Leave to File an Amended Complaint for futility.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff has served in the U.S. House of Representatives since 2003.  Compl., ECF No. 1 [hereinafter Compl.], ¶ 8.  He represents California's 22nd Congressional District, which is in the San Joaquin Valley and includes portions of Tulare and Fresno Counties, and he currently serves

as the Ranking Member of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee").  *Id.*

On February 21, 2020, the Post published an article titled "Senior intelligence official told lawmakers that Russia wants to see Trump reelected."  *Id.* ¶ 3; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 9 [hereinafter Def.'s Mem.], Ex. A, ECF No. 9-1 [hereinafter Article]. The Article reported that Shelby Pierson, a senior U.S. intelligence official, told members of the House Intelligence Committee, including Plaintiff, that Russia had "developed a preference" for President Trump and wanted to see him reelected.  *Id.*  According to an unnamed committee official, the briefing was open to all Committee members and covered "election security and foreign interference in the run-up to the 2020 election."  *Id.*  The Article did not specify the date of the briefing.  *See id.*

The Article went on to report that President Trump "learned about Pierson's remarks from Rep. Devin Nunes (Calif.), the committee's ranking Republican and staunch Trump ally."  *Id.*  The Article continued:  "Trump grew angry at his acting director of national intelligence, Joseph Maguire, in the Oval Office, seeing Maguire and his staff as disloyal for speaking to Congress about Russia's perceived preference."  *Id.*  Citing "people familiar with the matter," the Article noted that "Trump erroneously believed that Pierson had given the assessment exclusively to Rep. Adam B. Schiff (D-Calif.), the chairman of the House Intelligence Committee."  *Id.*  The Article did not specify the source or basis for the President's erroneous belief.  *See id.*  President Trump reportedly said that "Maguire should not have let the Capitol Hill briefing happen—particularly before he received the briefing—and that he should not have learned about it from a congressman," an apparent reference to Plaintiff.  *Id.*  The Article reported that "[Pierson's] analysis and Trump's furious response ruined Maguire's chances of becoming the permanent intelligence chief."  *Id.*

Maguire had been considered "a leading candidate to be nominated to the post of [Director of National Intelligence], . . . [b]ut Trump's opinion shifted . . . when he heard from [Nunes] about the official's remarks." *Id.*  The Article noted that, on Wednesday, February 19, 2020, President Trump announced on Twitter that he was replacing Maguire with Richard Grenell, the then–U.S. ambassador to Germany and "a vocal loyalist." *Id.*

### B.    Procedural Background

On March 2, 2020, Plaintiff originally filed this action against Defendants in the Eastern District of Virginia, alleging one count of defamation per se and one count of common law conspiracy. *Id.* ¶¶ 16–29.  In his Complaint, Plaintiff contends that statements in the Article, "republished millions upon millions of times," *id.* ¶ 15, "accuse and impute to [him] criminal misconduct" and "prejudice [him] in his profession and employment as a United States Congressman," *id.* ¶ 18.  Specifically, he identifies two statements as false and defamatory: (1) that Plaintiff told President Trump that Pierson had given her assessment of Russia's preference for President Trump "exclusively to Rep. Adam Schiff" and (2) that the President's "opinion of Maguire shifted" after hearing from Plaintiff about Pierson's remarks. *Id.* ¶ 4.  The Complaint seeks at least $250,000,000 in compensatory damages and at least $350,000 in punitive damages. *Id.* at 23.

On March 26, 2020, the Post moved to dismiss the Complaint for failure to state a claim and also moved to transfer the case to the District Court for the District of Columbia. *See* Def.'s Mot. to Dismiss Compl., ECF No. 8; Def.'s Mot. to Transfer, ECF No. 10.  In moving to dismiss, the Post argued that the Complaint failed to sufficiently allege a false and defamatory statement and actual malice, and that the civil conspiracy claim failed for the same reasons. *See* Def.'s Mem. at 8–17, 26–28.  In addition, asserting that California law applies to Plaintiff's claims, the Post

maintained that Plaintiff's claims are procedurally barred in part because he failed to provide notice of them under California's Retraction Statute, Cal. Civ. Code § 48a. *See id.* at 17–24. Due to that failure, according to the Post, all that is available as a remedy to Plaintiff under California law is special damages, which he did not plead. *See id.* at 24–26.

On May 27, 2020, the case was transferred to this court, ECF No. 21, where the Post renewed its motion to dismiss, *see* Def.'s Suppl. Br., ECF No. 24. Nearly four months later, with the motion to dismiss still pending, Plaintiff asked for leave to file an amended complaint. *See* Pl.'s Mot. for Leave to File Amended Compl., ECF No. 30 [hereinafter Pl.'s Mot. for Leave]. The proposed amendments do not alter Plaintiff's substantive allegations but rather add a new false light invasion of privacy claim, respond to the Post's procedural defense under California's Retraction Statute, and shore up Plaintiff's pleading on special damages. *See* Pl.'s Mot. for Leave, First Am. Compl., ECF No. 30-1 [hereinafter Am. Compl.]

## III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 344–45 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When evaluating a motion under Rule 12(b)(6), the court must "accept the plaintiff's factual allegations as true," *Sickle*, 884 F.3d at 345, and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts

alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The court need not accept as true, however, "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining whether a complaint fails to state a claim under Rule 12(b)(6), a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).  As relevant here, "[a] district court may consider documents attached to a motion to dismiss, without converting the motion into a motion for summary judgment, if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims." *See Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017) (citing *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) and *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).

## IV.   DISCUSSION

The Complaint contains two related counts:  The first claims that Defendants defamed Plaintiff; the second claims that Defendants conspired with House Democrats to defame him.  Compl. ¶¶ 16–29.  The Post argues that both counts should be dismissed for failure to state a claim.  *See* Def.'s Mem.  As explained below, the court agrees.[1]  And because Plaintiff's

---

[1] Because the court finds that Plaintiff fails to plead plausible claims of defamation and civil conspiracy, the court does not reach the thorny question of whether the California Retraction Statute applies to Plaintiff's claims and limits his relief to special damages.

proposed amendments fail to cure the Complaint's fundamental defects, the court also denies Plaintiff's Motion for Leave to File an Amended Complaint.

### A.    Count I: Defamation

#### 1.    Defamation by Implication

Although Plaintiff styles the first count as "defamation per se," Compl. at 15, his claims are more appropriately considered defamatory implication claims. "[D]efamation by implication stems not from what is literally stated, but from what is implied." *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). Plaintiff does not challenge the substantial truth of any statement in the Article. *See* Compl. ¶ 4 (taking issue with one statement not actually in the Article and contesting another statement's implication). Rather, he alleges that "[t]he defamatory *gist* of the [Article] is that Plaintiff lied to and deceived the President of the United States[.]" *Id.* ¶ 5 (emphasis added); Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 15 [hereinafter Pl.'s Opp'n], at 4–5 (same). Thus, Plaintiff contests not any assertion of fact contained in the Article but, rather, the meaning conveyed by those facts.

To establish defamation by implication, the plaintiff must demonstrate (1) that "a defamatory inference can reasonably be drawn" and (2) that "the particular manner or language in which the true facts are conveyed" supplies "additional, affirmative evidence suggesting that the defendant *intends or endorses* the defamatory inference." *White*, 909 F.2d at 520.[2] Here, the

---

[2] Although the parties disagree on which state's defamation law applies, *compare* Pl.'s Opp'n at 10–12, *with* Def.'s Mem. at 17–22, the Post's defenses are derived from the First Amendment's protections, so the court need not make a choice-of-law determination for present purposes. In any event, as to the grounds for dismissal, neither side has suggested any material difference in the applicable law. *See, e.g., Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (applying D.C. law and stating that a plaintiff must allege, among other things, "that the defendant made a false and defamatory statement concerning the plaintiff" (internal quotation marks omitted)); *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) ("An 'actionable' statement is both false and defamatory."); *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007) (indicating the same).

Complaint alleges two defamatory implications stemming from statements in the Article, neither of which can rationally be considered reasonable or intended or endorsed.

Plaintiff first alleges that Defendants defamed him by implying that he "lied to and deceived the President of the United States" by telling the President that Shelby Pierson "had given an exclusive briefing" to Representative Adam Schiff.  Compl. ¶¶ 4–5.  The Article does not, however, say that Plaintiff told the President that Pierson had delivered an "exclusive briefing" to Representative Schiff.  It reports only that "Trump erroneously believed that Pierson had given the assessment exclusively to Rep. Adam B. Schiff."  Article.  Plaintiff pieces that statement together with the Article's subsequent statement that "Trump learned about Pierson's remarks from [Plaintiff]" to allege the implication that Plaintiff lied to the President.  Compl. ¶¶ 4–5.  But such an inference is unreasonable.  Even if one could plausibly read the Article as implying that Plaintiff's communications with President Trump somehow contributed to the President's erroneous belief, nothing in the Article suggests that Plaintiff affirmatively "lied to and deceived" the President.  As the Post notes in its brief: "In the absence of any other explanation, the reasonable assumption is that there was a simple misunderstanding or miscommunication."  Def.'s Mem. at 10.  The defamatory implication Plaintiff asserts is further negated by the Post's description of the briefing as one "offered to all members of the committee."  Article.  That uncontested fact leaves the reader with the impression that the President's "erroneous" understanding was the product of mistake or misunderstanding, not a falsehood uttered by Plaintiff.  This view is reinforced by the Article's description of Plaintiff as "a staunch Trump ally."  Article.  Plaintiff points to no facts to support the inference that a "staunch ally" would deliberately deceive the President about the exclusivity of an intelligence briefing, when the fact of the briefing's access

to all members was so readily ascertainable.  For these same reasons, the alleged defamatory inference cannot be considered either intended or endorsed by Defendants.

Plaintiff's second alleged implication fares no better.  The Complaint highlights the Article's statement that "Trump's opinion of [Acting Director of National Intelligence Maguire] shifted . . . when he heard from a Republican ally about [Pierson's] remarks."  Compl. ¶ 4.  In Plaintiff's view, that statement implies that Plaintiff sought "to 'ruin' Maguire's chances of becoming the permanent intelligence chief."  *See id.*  But as the Post points out, the Article explains that it was "*[t]he intelligence official's analysis* and Trump's furious response [that] ruined Maguire's chances of becoming the permanent intelligence chief," not Plaintiff's characterization of Pierson's remarks.  Def.'s Mem. at 12 (alterations in original) (quoting the Article).  As a result, any inference that Plaintiff sought to "ruin" Maguire's chances for appointment as Director of National Intelligence is unreasonable.  And assuming it were reasonable, Plaintiff provides no warrant for the idea that "the particular manner or language" of the Article's statements supplies "additional, affirmative evidence suggesting that the [Post] intends or endorses" such an inference.  *White*, 909 F.2d at 520.

### 2.   *Actual Malice*

Even if the court were to treat Plaintiff's claims as straightforward defamation claims, the Post argues that Count I should be dismissed for an independent reason:  The Complaint does not plausibly allege that Defendants acted with "actual malice."  Def.'s Mem. at 12–17.  The court agrees.

At the outset, Plaintiff does not dispute that he is a "public figure" for purposes of defamation law.  *See generally* Pl.'s Opp'n.  Accordingly, to make out any kind of defamation claim, Plaintiff must plausibly allege that Defendants published the Article "with 'actual malice,'

that is, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"
*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964)).  Stated another way, Plaintiff must plead facts that would render it plausible that Defendants "in fact entertained serious doubts as to the truth of [their] publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  He fails to do so.

Instead of engaging with the Post's arguments on actual malice, Plaintiff repeats various—largely conclusory—allegations from his Complaint.  *See* Pl.'s Opp'n at 16–21.  One set of allegations amounts to nothing more than the naked assertion that Defendants knew the statements in the Article were false.  *See id.* at 16–18 (citing Compl. ¶ 21(a) (Defendants "manufactured the statements out of whole cloth"); *id.* ¶ 21(b) (Defendants "conceived the story line in advance of any investigation"); *id.* ¶ 21(f) ("The words chosen by [Defendants] . . . evince their . . . actual malice.")).  This type of pleading, which offers no more than "labels and conclusions" and a reference to the relevant legal standard, does not satisfy Rule 8.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* (noting that a complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement" (cleaned up)).

Another set of allegations boils down to the claim that Defendants published the Article due to animus against Plaintiff and others.  *See* Pl.'s Opp'n at 16, 18–21 (citing Compl. ¶ 7 (Defendants "republished false statements in order to impugn Plaintiff's reputation and undermine his relationship with the President"); *id.* ¶ 21(g) (Defendants "harbor an institutional hostility, hatred, extreme bias, spite and ill-will towards Plaintiff"); *id.* ¶ 21(h) (Defendants "published and republished the false defamatory statements about Plaintiff out of a desire to hurt Plaintiff and to permanently stigmatize him"); *id.* ¶ 21(i) (Defendants published the Article "out of reprisal for the findings in the December 11, 2019 Inspector General (IG) Report")).  Besides the fact that these

9

allegations are similarly conclusory, "caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice." *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[A defendant's] motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice."); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.").

Plaintiff also peppers his opposition brief with several stray allegations that do nothing to move the needle. First, he cites his allegation that, pre-publication, Defendants initially represented that Plaintiff and the President met at the White House on February 13, 2020, even though Defendants did not ultimately include that inaccuracy in the Article. Pl.'s Opp'n at 17 (citing Compl. ¶ 21(c)). The court struggles to understand how a decision *not* to publish an inaccurate statement supports the claim that Defendants knowingly published false statements in the Article. If anything, Defendants' attempted verification and subsequent exclusion of the inaccurate statement suggests the opposite. Next, Plaintiff contends that Defendants "abandoned all journalistic standards and integrity . . . in writing, editing, and publishing the [Article]." *Id*. at 17–18 (quoting Compl. ¶ 21(d)). Yet Plaintiff nowhere identifies the "journalistic standards and integrity" that the Post purportedly violated. He cites *Gilmore v. Jones* for the general proposition that a "failure to investigate or observe journalistic standards, although not determinative, is relevant to the actual malice inquiry," 370 F. Supp. 3d 630, 671 (W.D. Va. 2019) (internal quotation marks omitted). Pl.'s Opp'n at 18. But in *Gilmore* itself, the departure from journalistic standards was a failure to seek comment, *see* 370 F. Supp. 3d at 674–75—the opposite of what happened here, *see* Article (noting that "[a] spokesman for [Plaintiff] did not respond to requests

for comment"); *see generally* Pl.'s Opp'n (not disputing the point).  Finally, Plaintiff references his allegation that Defendants knew he was in Tulsa, Oklahoma, for a campaign event on February 14, 2020, the day after the classified briefing.  He maintains this fact shows that he could not have possibly advised the President about the briefing.  Pl.'s Opp'n at 18 (citing Compl. ¶ 21(e)).  Although his allegation includes a specific fact that might bear on Defendants' subjective knowledge, it does not conflict with what the Post reported in the Article.  As the Post notes, "[t]he Article does not report *when* President Trump learned of the briefing from [Plaintiff] (or how) . . . [Plaintiff] could have conveyed the information to President Trump on a different day[.]"  Def.'s Mem. at 15.[3]  The allegation, therefore, does not support Plaintiff's claim that the Post knew that anything it reported in the Article was false.

* * *

Because the Complaint fails to plead the threshold requirements for defamation by implication and, in any case, fails to plausibly plead actual malice, Count I is dismissed.

### B.    Count II: Common Law Conspiracy

Count II alleges a common law conspiracy between Defendants and House Democrats "for the express purpose of defaming and injuring Plaintiff."  Compl. ¶¶ 24–29; *see* Pl.'s Opp'n at 21–22.  But "[b]ecause [Plaintiff's underlying] defamation claim fails, so do[es] [his] other tort claim[] based upon the same allegedly defamatory speech."  *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013).  Thus, Count II must also be dismissed.  *Cf. Lokhova v. Halper*, 441 F. Supp. 3d 238, 266 (E.D. Va. 2020) ("[W]here there is no actionable claim for the underlying alleged wrong, plaintiff cannot maintain a claim for civil conspiracy." (internal quotation marks omitted)).

---

[3] Even accepting as true Plaintiff's assertion that he did not "meet or speak" to the President either on February 13 or 14, 2020, Compl. ¶ 4, additional days passed before February 19, 2020, when the President reportedly announced his decision to replace Maguire as intelligence chief, *see* Article.  Plaintiff noticeably does not allege he did not "meet or speak" with the President between February 15 and 19, 2020.

### C.   Plaintiff's Motion for Leave to File an Amended Complaint

Having explained the deficiencies in Plaintiff's original Complaint, the court now addresses his Motion for Leave to File an Amended Complaint. As Plaintiff rightly notes, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as . . . futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). "[A]rguing the futility of an amendment is akin to contending that the new complaint would not survive a motion to dismiss." *Bess v. District of Columbia*, Civ. Action No. 19-3152 (JEB), 2020 WL 4530581, at *3 (D.D.C. Aug. 6, 2020).

Here, the court concludes that Plaintiff's amendments would be futile because they fail to cure the defects explained above. For one, the Amended Complaint contains no further allegations that would satisfy the pleading requirements for defamation by implication. *Compare* Compl. ¶¶ 4–5, *with* Am. Compl. ¶¶ 2–3. Moreover, the Amended Complaint does nothing to address Plaintiff's inability to plead actual malice. Instead, it repeats the same litany of conclusory or otherwise insufficient allegations. *See* Am. Compl. ¶ 16. Plaintiff invites the court to reconsider the actual malice standard established in *New York Times v. Sullivan*, Pl.'s Reply in Supp. of Mot. for Leave to File Am. Compl., ECF No. 32, at 6–11, but for obvious reasons, the court cannot do so, *see Agostini v. Felton*, 521 U.S. 203, 237 (1997) (indicating that lower courts should "leav[e] to th[e] [Supreme Court] the prerogative of overruling its own decisions").

Lastly, Plaintiff's inclusion of a third count—false light invasion of privacy—is unavailing. *See* Am. Compl. ¶¶ 24–28. "[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. The First Amendment considerations that apply to defamation therefore apply also to [a plaintiff's] count[] for false light." *Farah*, 736 F.3d at 540 (citation omitted). Because Plaintiff cannot overcome those First Amendment considerations in

the defamation context, the same must be true for his false light claim, which is based on the same underlying allegations.  *See* Am. Compl. ¶¶ 24–28.  Thus, because Plaintiff's false light claim would not survive a Rule 12(b)(6) motion, its inclusion does not alter the futility of the Amended Complaint.  *See Bess*, 2020 WL 4530581, at *3.

## V.   CONCLUSION

For the reasons stated, the Post's Motion to Dismiss, ECF No. 8, is granted, and Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 30, is denied.  A separate final order accompanies this Memorandum Opinion.[4]

Dated:  December 24, 2020

Amit P. Mehta
United States District Court Judge

---

[4] As Plaintiff has made no effort, to the court's knowledge, to serve Defendant Harris, the court dismisses this action in its entirety.

13