# United States Court of Appeals
#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20-7121                                                                 September Term, 2021
FILED ON: APRIL 1, 2022

DEVIN G. NUNES,
              APPELLANT

v.

WP COMPANY LLC AND SHANE HARRIS,
              APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01403)

Before: ROGERS, MILLETT and PILLARD, *Circuit Judges*.

**JUDGMENT**

This case was considered on the record from the United States District Court for the District of Columbia, as well as on the briefs of the parties. We have accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the United States District Court for the District of Columbia be **AFFIRMED**.

I

A

Devin Nunes is a former Congressman from California who served as Ranking Member of the House Permanent Select Committee on Intelligence from January 2019 to January 2022. On February 21, 2020, the Washington Post published an article entitled "Senior intelligence official told lawmakers that Russia wants to see Trump reelected." Ellen Nakashima et al., *Senior Intelligence Official Told Lawmakers That Russia Wants to See Trump Reelected*, WASH. POST (Feb. 21, 2020), https://wapo.st/3iddQ0x. The article described a briefing given to members of the House Intelligence Committee by Shelby Pierson, a senior intelligence official, in which Pierson informed the lawmakers that Russia had "developed a preference" for then-President Trump and wanted to see him reelected. *Id.* According to the article, President Trump was

"furious" when he heard about the briefing and blamed Joseph Maguire, the acting Director of National Intelligence. *Id.* Maguire had been under consideration for the role of permanent Director of National Intelligence, but "Trump's opinion shifted * * * when he heard from a Republican ally about the official's remarks." *Id.* The perceived betrayal "ruined Maguire's chances" for the top spot. *Id.*

The article went on to report that "Trump erroneously believed that Pierson had given the assessment exclusively to Rep. Adam B. Schiff (D–Calif.), the chairman of the House Intelligence Committee[.]" Nakashima et al., *supra*. In the next paragraph, the article stated that "Trump learned about Pierson's remarks from Rep. Devin Nunes[,]" who is described as a "staunch Trump ally[.]" *Id.* It also noted that "Trump's suspicions of the intelligence community have often been fueled by Nunes[.]" *Id.* The article added that a "spokesman for Nunes did not respond to requests for comment." *Id.*

**B**

Nunes brought suit against the Washington Post's parent company, WP Company, LLC.[1] Nunes alleged that the Post defamed him by implying that (1) he "lied to and deceived the President of the United States" regarding the audience of the briefing, and (2) he was to blame for "ruin[ing] Maguire's chances of becoming the permanent intelligence chief[.]" J.A. 9–10. Nunes also included a count of common law conspiracy, alleging that the Post conspired with House Democrats to defame him. He sought at least $250,000,000 in compensatory damages and at least $350,000 in punitive damages.

Nunes originally filed his action in the United States District Court for the Eastern District of Virginia. The Post subsequently moved to dismiss the complaint for failure to state a claim or to transfer the case to the United States District Court for the District of Columbia. In its motion to dismiss, the Post argued that Nunes had failed to sufficiently allege a false and defamatory statement or actual malice. The Post also asserted that California law applies, and that Nunes failed to demand a correction as required by California's retraction statute. Failure to do so limits the plaintiff to special damages. CAL. CIV. CODE § 48a (West 2017).

The district court in Virginia granted the Post's motion to transfer the case, concluding that the District of Columbia "is the more logical and convenient forum in which to adjudicate the claims" because the District was where Nunes worked, the Post is located, the article was researched, written, and published, and potential witnesses resided or worked. J.A. 47, 53–61. The motion to dismiss was left for the transferee court to resolve and remained pending after transfer. Nearly four months after the case was transferred, Nunes filed a motion for leave to file an amended complaint. The revised complaint added an allegation of special damages in response to the Post's invocation of the California retraction statute, and included a new false light invasion of privacy claim.

**C**

In December 2020, the district court granted the Post's motion to dismiss for failure to state

---

[1] The complaint also named Shane Harris, one of the article's authors, as a defendant. But Nunes never served Harris.

2

a claim under Federal Rule of Civil Procedure 12(b)(6).  At the outset, the court explained that, although Nunes "style[d] the first count as 'defamation per se,' * * * his claims are more appropriately considered defamatory implication claims."  J.A. 104.  The court then held that the alleged defamatory inference—that Nunes had affirmatively lied to President Trump and consequently ruined Maguire's career advancement prospects—was unreasonable.  Nothing in the article suggested that Nunes had deceived the President, the court explained.  Next, the court noted Nunes's concession that he is a public figure and therefore must show actual malice.  *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  The court held that Nunes failed to state a plausible claim of actual malice because most of his allegations were simply "naked assertion[s] that [the Post] knew the statements in the [a]rticle were false."  J.A. 107.  The rest of his allegations were either legally irrelevant or tended to show that the Post had *not* acted with actual malice.  Having rejected Nunes's defamation claim, the court concluded that Nunes's claim of conspiracy to commit defamation must be dismissed as well.  And given that Nunes "fail[ed] to plead plausible claims of defamation and civil conspiracy," the court declined to reach the "thorny question" of whether the California retraction statute applies.  J.A. 103 n.1.

The district court also denied Nunes's motion for leave to file an amended complaint because the proposed amendments would not cure any of the fatal legal flaws in his claims.  The court explained that the amended complaint "contains no further allegations that would satisfy the pleading requirements for defamation by implication" and "does nothing to address [Nunes's] inability to plead actual malice."  J.A. 110.  In his briefing, Nunes had "invite[d] the court to reconsider the actual malice standard established in *New York Times v. Sullivan*[.]"  J.A. 110.  The court declined that invitation "for obvious reasons[.]"  J.A. 110 (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[Lower courts] should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions.")).  Finally, the court concluded that the deficiencies in Nunes's defamation claim would also doom his proposed false light claim.

## II

### A

The district court's jurisdiction rested on 28 U.S.C. § 1332.  Nunes filed a timely notice of appeal on December 28, 2020.  This court has jurisdiction under 28 U.S.C. § 1291.

We review the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*.  *Farah v. Esquire Mag.*, 736 F.3d 528, 531 (D.C. Cir. 2013).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B

Both parties rely upon District of Columbia law to establish the relevant elements of the defamation claim, and agree that the conspiracy and false light claims are entirely dependent on the viability of the defamation claim.  *See* Nunes Opening Br. 24, 34; Post Br. 22–23, 52–53.  So we take as given the applicability in this case of District law, with the First Amendment's

3

constitutional overlay.[2]

The parties separately dispute whether California's retraction statute applies, but that question arises with respect to damages only if a defamation claim is properly stated.

### III

The district court correctly held that Nunes failed to plausibly allege a claim of defamation.

As a threshold matter, we agree with the district court that, despite Nunes's description in his complaint of his claim as "defamation *per se*" and "express[] libel[]," J.A. 21, 77, his claim can only plausibly be construed as one of defamation by implication. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("A defamation by implication stems not from what is literally stated, but from what is implied."). Nunes does not point to a single statement in the article that he claims is false, let alone defamatory, on its face. Rather, discerning what Nunes refers to as the "defamatory gist" of the article requires reading between the lines for its implications. J.A. 10. Notably, Nunes does not deny that he was the one who told President Trump about the intelligence briefing. He denies only that he falsely told President Trump that the briefing was given exclusively to Representative Schiff, which is something the article does not expressly attribute to Nunes.

Nunes has not plausibly pled a claim of defamation by implication. To establish such a claim, Nunes had to allege facts showing that (1) "a defamatory inference can reasonably be drawn" from the statement(s), and (2) "the particular manner or language in which the true facts are conveyed" supplies "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference[.]" *White*, 909 F.2d at 520 (emphases in original). In considering claims of defamation by implication, courts "must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Id.* at 519.

We need not decide whether Nunes's complaint properly alleged facts showing that a defamatory inference could be drawn from the article for purposes of the first prong of that test. That is because the complaint plainly fails the second prong's requirement of "affirmative evidence suggesting that the [Post] intend[ed] or endors[ed] the defamatory inference" that Nunes lied to President Trump about the briefing or that he was responsible for Maguire's loss of favor. *White*, 909 F.2d at 520 (emphases omitted). Nothing in the article suggests an intent on the part of the

---

[2] Regardless, there is no difference in how District, California, or Virginia law define the elements of defamation relevant to this case. *See White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (requiring that "a defamatory inference can reasonably be drawn," and that there be "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference") (emphases in original); *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010) ("To state a claim for implied defamation [under California law], * * * the published statement must reasonably 'be understood as implying the alleged defamatory content.'") (quoting *Weller v. American Broad. Co.*, 283 Cal. Rptr. 644, 651 n.8 (Cal. Ct. App. 1991)); *Webb v. Virginian-Pilot Media Cos.*, 752 S.E.2d 808, 811 (Va. 2014) ("Where * * * a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used."); *Pendleton v. Newsome*, 772 S.E.2d 759, 765 (Va. 2015) (The plaintiff must show that the statements "were designed and intended by the defendants to imply" the defamatory meaning.).

Post to imply that Nunes lied to President Trump or that his communications were responsible for Maguire's loss of the top intelligence position.  The article merely states in a matter-of-fact manner that (1) "Trump erroneously believed that Pierson had given the assessment exclusively to [Schiff,]" (2) "Trump's opinion [of Maguire] shifted * * * when he heard from a Republican ally about the official's remarks[,]" and (3) "Trump learned about Pierson's remarks from Rep. Devin Nunes[.]"  Nakashima et al., *supra*.  Nothing about the "particular manner or language in which th[ose] true facts are conveyed" indicates that the Post intended or endorsed the alleged defamatory implication.  *White*, 909 F.2d at 520.

Given that Nunes has not sufficiently alleged defamation by implication, there is no need for us to reach the question of whether the statements were made with actual malice.  For the same reason, Nunes's alternative argument that the actual malice standard should be abandoned has no bearing on this case.

The remainder of Nunes's contentions lack merit as well.

Nunes's conspiracy claim, as well as the false light claim contained in his proposed amended complaint, cannot stand without the defamation claim.  *Farah*, 736 F.3d at 540 ("Because [the plaintiffs'] defamation claim fails, so do their other tort claims based on the same allegedly defamatory speech."); *Moldea v. New York Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion.") (citation omitted).

In light of Nunes's failure to plausibly allege defamation by implication, we have no occasion to decide the applicability of California's retraction statute.

**IV**

For all of these reasons, the judgment of the district court is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

                                      **FOR THE COURT:**
                                      Mark J. Langer, Clerk

BY:    /s/
         Daniel J. Reidy
         Deputy Clerk